UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LOUIS DREYFUS COMMODITIES SUISSE SA | * CIVIL ACTION<br>*<br>* NO. |
| VERSUS | *<br>* SECTION " " |
| PRESIDENT SEATRADE SA | *<br>* MAGISTRATE (   )<br>* |

**VERIFIED COMPLAINT**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Louis Dreyfus Commodities Suisse SA ("Louis Dreyfus"), and for its Verified Complaint against President Seatrade SA ("Seatrade"), alleges, upon information and belief, as follows:

1.

This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and is brought pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. Jurisdiction is proper under 28 U.S.C. § 1333, as hereinafter more fully set forth. This action is brought pursuant to 9 U.S.C. § 8 for the purpose of obtaining security for a foreign arbitration proceeding. Venue is proper in this Court because Defendant has property located within this district, *to wit*, the M/V DIAS ("Vessel").

2.

At all material times to this action, Louis Dreyfus, was and still is a corporation or other business entity organized and existing under the laws of a foreign country.

3.

At all material times to this action, Seatrade was and is a corporation or other business entity organized and existing under the laws of a foreign country, and was and is the Registered Owner of the M/V DIAS.

4.

On or about January 7, 2016, Louis Dreyfus, as charterer, entered into an amended NYPE form charter party with Seatrade whereby Louis Dreyfus agreed to charter the M/V DIAS for a time charter trip of 40-45 days between Argentina and Italy.  As is customary, the charter agreement was memorialized in (1) a fixture recap, (2) a *pro forma* charter party, and (3) rider clauses, which together constitute and are hereinafter collectively referred to as the "DIAS Charter Party."  *See* M/V DIAS Fixture Recap, attached as Exhibit A (the "Fixture Recap"); Pro Forma NYPE Form Charter Party, attached as Exhibit B ("NYPE Form Charter Party"); Rider Clauses, attached as Exhibit C ("Rider Clauses").

5.

Pursuant to the DIAS Charter Party, Seatrade was obligated to deliver the M/V DIAS into Louis Dreyfus's service on January 15, 2016 "with hull, machinery and equipment in a thoroughly efficient state", following which the Vessel was to prosecute the voyage as instructed by Louis Dreyfus in exchange for payment of charter hire at the rate of $4,000.00 USD per day or pro rata portion thereof. *See* Fixture Recap, p. 1; NYPE Form Charter Party, line 5.  The DIAS Charter Party further required that upon delivery the Vessel be "tight, staunch, strong and in every way fitted for Charterers' cargo/trade," and that Owners maintain the Vessel in such

condition throughout the entirety of the charter term.  *See* NYPE Form Charter Party, lines 21-22.

6.

In the DIAS Charter Party, Seatrade warranted that the Vessel was capable of consuming both Intermediate Fuel Oil (IFO) and Marine Gas Oil (MGO), and that the Vessel consumed approximately 3 metric tons of MGO per day whether sailing or in port. *See* Fixture Recap, pp. 5-6.

7.

Clause 15 of the DIAS Charter Party further provided as follows:

> That in the event of the loss of time from deficiency and/or default of men including strike of crew/officers or deficiency of stores, fire, breakdown or damages to hull, machinery or equipment, grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination [of] bottom, or by any other cause [of] similar nature preventing the full work of the vessel, unless caused by the Charterers or their servants, the payment of hire shall cease for the time thereby lost; and if upon the voyage the speed be reduced by defect in or breakdown of an part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence thereof, and all extra expenses shall be deducted from the hire.

8.

On January 15, 2016, in breach of its obligations under the DIAS Charter Party, Seatrade failed to deliver the vessel into the service of Louis Dreyfus's in a seaworthy state and with her machinery, equipment, and crew fit for Louis Dreyfus's cargo and trade.  As set forth in Paragraphs 9 through 13, Seatrade's breach of its obligation under the DIAS Charter Party to supply a vessel reasonably fit for her intended voyage caused damages to Louis Dreyfus in the

form of additional expenses, lost revenue, and losses related to numerous delays to the Vessel during the charter's term.

9.

On or about January 17, 2016, the Vessel suffered a failure of her cooling system and/or fuel heating system, rendering the Vessel unable to consume IFO as fuel and forcing the Vessel to consume large quantities of MGO instead (including consumption of approximately 30 metric tons of MGO from January 17-19, 2016, far exceeding the represented rate of 3 metric tons per day set forth in the DIAS Charter Party).  As a result of the Vessel's equipment failure Louis Dreyfus was forced to supply far more MGO to the Vessel than Seatrade had represented would be required for the voyage, including an emergency delivery of 50.944 metric tons of MGO made to the Vessel on January 30, 2016.  The cost of that MGO, which was supplied under protest by Louis Dreyfus and which is properly for Seatrade's account, was $62,757.12. *See* Provisional Final Hire Statement, attached as Exhibit D.

10.

On January 21, 2016, and on information and belief as the result of her excessive consumption of MGO, the Vessel suffered a total loss of electrical power.  The blackout resulted in interruption of cargo operations from midnight on January 22, 2016,  until 2140 on January 23, 2016, when the Vessel was supplied with additional MGO.

11.

Following the completion of loading operations in Argentina at 0300 on January 24, 2016, the Vessel was delayed departing from her load berth until 1800 on January 30, 2016, as a result of ongoing repairs to the Vessel's machinery and equipment and a flood in the Vessel's engine room caused by the negligence of her crew.  Further, on January 25, 2016, the Argentine

Coast Guard inspected the Vessel and identified numerous deficiencies, resulting in the withholding of the Vessel's departure clearance until additional repairs were made.

12.

The Vessel ultimately departed from her load berth on January 31, 2016. During her ensuing river transit, the Vessel's main engine malfunctioned, forcing the Vessel to anchor. As a result of her main engine failure, the Argentine Coast Guard again restricted the Vessel pending repairs. The Vessel remained at anchorage from 2:40 on January 31, 2016, through 5:48 on February 1, 2016. The Vessel was then delayed again from 14:48 through 17:30 on February 1, 2016, when, as a result of her engine breakdown having stalled her river transit, the Vessel was caught in an area of restricted traffic due to the breakdown of another vessel.

13.

The Vessel was delayed yet again from 19:08 until 19:39 on February 2, 2016, while the vessel's class surveyor attended onboard to inspect the repairs performed in Argentina.

14.

Each of the events described in Paragraphs 10 through 13 caused the Vessel to be placed off-hire, suspending the accrual of charter hire and resulting in deductions of bunkers consumed during the delays.

15.

At the conclusion of the charter's term, Louis Dreyfus issued to Seatrade a Provisional Final Hire Statement setting forth the amounts for hire, off-hire deductions, bunkers, owner's expenses, etc., that were incurred during the voyage, in addition to the advance hire payments made by Louis Dreyfus. As detailed in the Provisional Final Hire Statement, which is fully incorporated herein by reference, the charter concluded with a net payment due from Seatrade to

Louis Dreyfus of $110,441.41 USD.  Despite amicable demand, and in further breach of the DIAS Charter Party, Seatrade has refused to pay this amount due to Louis Dreyfus.

17.

The DIAS Charter Party, which is governed by English law, provides that all disputes arising under or in connection with the charter shall be resolved by London arbitration.  As of this filing arbitration proceedings between Louis Dreyfus and Seatrade have been commenced and remain pending.  Louis Dreyfus brings this action pursuant to 9 U.S.C. § 8 for the purpose of obtaining security for the aforementioned arbitration proceedings.

## **RULE B ALLEGATIONS**

18.

Louis Dreyfus, by this reference, incorporates all foregoing allegations as Rule B Allegations as if repeated herein *in extenso*.

19.

Seatrade's failure to pay the amount due to Louis Dreyfus under the DIAS Charter Party gives rise to an *in personam* claim for breach of contract in favor of Louis Dreyfus and against Seatrade in the principal amount of $110,441.41 (ONE HUNDRED TEN THOUSAND FOUR HUNDRED FORTY-ONE DOLLARS AND 41/100).

20.

Seatrade, on information and belief, cannot be found within the jurisdiction of this Court within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure but, as alleged, has goods and chattels within this District subject to seizure, arrest and attachment, namely the M/V DIAS, her engines, tackle, apparel, furniture, etc.  Further, because Seatrade is not found within the district as contemplated

under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, Louis Dreyfus is entitled to a Writ of Attachment pursuant to Rule B, executable against Seatrade and all of its property within the district, including the M/V DIAS, her engines, tackle, apparel, appurtenances, equipment, furniture, etc.

21.

Louis Dreyfus agrees to hold harmless and indemnify the U.S. Marshal and all of his deputies for any loss or damages associated with the attachment of property as prayed for herein.

WHEREFORE, Plaintiff, Louis Dreyfus, prays that:

1. This Verified Original Complaint be deemed good and sufficient;

2. Process in due form of law according to the practice of this Honorable Court issue against Seatrade citing it to appear and answer this Verified Complaint;

3. After due proceedings are had, there be judgment in favor of Louis Dreyfus and against Seatrade in the full amount of Louis Dreyfus's claims, together with interest, costs, and attorney's fees, as set forth above;

4. Process according to the rules and practices of this Honorable Court in causes of admiralty and maritime jurisdiction issue to attach and seize in the amount sued for Seatrade's goods, chattels, credits, monies, and effects of any kind; and

5. Louis Dreyfus be granted all further relief as justice and equity may permit.

> Respectfully submitted,
>
> CHAFFE McCALL, L.L.P.
>
>     */s/ Alan R. Davis*
> Derek A. Walker, #
> Alan R. Davis, #31694
> 2300 Energy Centre
> 1100 Poydras Street
> New Orleans, LA 70163-2300
> Telephone: (504) 585-7000
> **Attorneys for Louis Dreyfus Commodities Suisse SA**